NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2017-0501


ROCHESTER CITY COUNCIL

v.

ROCHESTER ZONING BOARD OF ADJUSTMENT & a.

Argued:  April 12, 2018
Opinion Issued:  September 7, 2018


Terence M. O'Rourke, city attorney, of Rochester, by brief and orally, for the plaintiff.

Donald F. Whittum Law Office PLLC, of Rochester (Donald F. Whittum on the memorandum of law and orally), for defendants Donald and Bonnie Toy.


LYNN, C.J.  The plaintiff, Rochester City Council, appeals an order of the Superior Court (Howard, J.) affirming defendant City of Rochester Zoning Board of Adjustment's grant of a variance to defendants Donald and Bonnie Toy.[1]  On appeal, the plaintiff argues that the trial court: (1) erred in affirming the ZBA's decision to grant a variance to the Toys; and (2) unsustainably exercised its discretion in denying the plaintiff's motions to expand the record. We affirm.

_____

[1] The ZBA did not participate in this appeal.

The pertinent facts are as follows.  The Toys own a 14.5-acre manufactured housing park known as "Addison Estates" in Rochester.  Addison Estates contains 25 approved lots, 15 of which are built and occupied.  The Toys installed an on-site sewage disposal system in Addison Estates and provide "for maintenance of all of the private utilities within the subdivision."

In April 2014, the Rochester City Council passed an updated zoning ordinance that eliminated manufactured housing parks as permitted uses anywhere in the city.

In 2015, the Toys purchased a 22-acre lot (Lot 54-1) that abuts Addison Estates.  In August 2016, they applied for a variance to expand their manufactured housing park onto Lot 54-1.  See RSA 674:33, I(b) (2016) (amended 2018).

The ZBA conducted a public hearing on the Toys' variance request on September 14, 2016.  The plaintiff, through counsel, appeared at the hearing and opposed the variance.  During the hearing, the Toys presented the following evidence.  The southern edge of Lot 54-1 runs along Old Dover Road for a distance of approximately 74 feet.  Lot 54-1 extends northerly 480 feet, while maintaining its width of approximately 74 feet, forming a "panhandle."  Lot 54-1 then widens and narrows in various places over the course of the next approximately 2100 feet, ultimately bordering on Whitehouse Road for approximately 525 feet.  The northern third of Lot 54-1 contains significant wetlands, and the wetlands and the challenging topography render the northern third of Lot 54-1 difficult to develop.

Addison Estates abuts Lot 54-1 to the west.  Most of the land to the northwest and east of Lot 54-1 is undeveloped.  To the southeast, there is a small lot that contains a single family dwelling that is in the process of being razed.  A mobile home park, Amazon Park, abuts Lot 54-1 on its northeasterly border.  Another mobile home park is located in Somersworth approximately 565 feet east of Lot 54-1.

The Toys proposed to construct a cul-de-sac originating at a point on Alexandria Lane in Addison Estates and extending into Lot 54-1.  The proposed project would include 14 units, which would be serviced by private utilities and services, except for water.  The water supply would connect to a main from Somersworth.

The Toys stated that the existing manufactured housing units in Addison Estates were valued at between $150,000 and $180,000 each, and they estimated that the proposed 14 units would generate $75,000 of annual tax revenue for Rochester.  The Toys agreed to restrict ownership of the units in Lot 54-1 to persons aged 55 or older.  They expected the age restriction to limit

2

the likelihood that school-age children would live in the development, thereby minimizing the potential impact on city services.

The ZBA granted the Toys' variance request. The ZBA's written decision did not explicitly address whether the Toys satisfied the unnecessary hardship requirement of RSA 674:33, I(b), but the ZBA did make brief findings supporting the other four statutory requirements.[2]

In October 2016, the plaintiff filed a motion for rehearing, which the ZBA denied. Pursuant to RSA 677:4 (2016), the plaintiff appealed to the trial court, arguing that the ZBA granted a variance without finding hardship, in contravention of RSA 674:33, I(b)(5). Before the court heard the appeal, the plaintiff filed two motions to expand the record. The first motion sought to introduce evidence of "conduct by the ZBA . . . that exist[s] outside of the official record," including evidence that: (1) the ZBA chairman spoke out against the 2014 zoning ordinance changes; (2) the ZBA chairman owns "mobile home parks" in Rochester and was "aggrieved" by the ordinance change; (3) the ZBA chairman attempted to change the ordinance; (4) the ZBA chairman is a longtime friend and associate of the Toys; and (5) the ZBA members discussed the merits of the plaintiff's motion for rehearing outside of an official meeting as defined by RSA 91-A:2-a (2013) (amended 2018). The second motion sought to introduce evidence that the ZBA chairman "stated that the only reason he voted to approve the variance granted to [the Toys] was because he was upset with the change to the Rochester Zoning Ordinance." The court denied both motions.

In denying the plaintiff's motions, the court stated that "[w]hile it is within the discretion of the trial court to allow additional evidence beyond the certified record even though such evidence was not before the board, the purpose of the additional evidence is to assist the court in evaluating the action of the board where the record is incomplete." (Citations omitted.) The court found that the requested evidence "does not go to the issues that were before the ZBA," but rather is "evidence of [the ZBA chairman's] potential conflict of interest, bias, or improper conduct." Thus, the court ruled that the plaintiff was "attempting to introduce into the record an entirely new issue — one that was at no time raised in the proceedings below — and which does nothing to clarify, explain, or augment the record before the ZBA relating to the variance."

The trial court observed that "conflict of interest or bias issues must be

---

[2] The ZBA may grant an applicant a variance if: (1) the variance will not be contrary to the public interest; (2) the spirit of the zoning ordinance is observed; (3) substantial justice is done; (4) the values of surrounding properties are not diminished; and (5) literal enforcement of the provisions of the ordinance would result in an unnecessary hardship. RSA 674:33, I(b) (2016) (amended 2018).

raised at the earliest possible time in order to allow the local board to address them." The court found that, although one statement that the ZBA chairman allegedly made was in February 2017, all of the other evidence that the plaintiff cited predated the September 2016 hearing. Moreover, the court noted that the plaintiff's attorney was present at the September 2016 hearing but did not "raise[] the issue with the ZBA, even though the minutes reflect that the Chair invited board members to identify any potential conflicts." The court determined that the plaintiff "clearly had knowledge of the grounds for recusal at the time it filed its motion for rehearing." Because "[t]he issue [was not] raised before the ZBA in order to allow [the ZBA] the opportunity to correct any error in its own proceedings," the court declined to allow the evidence to be introduced on appeal for the first time.

Following a hearing, the trial court affirmed the ZBA's decision. The court rejected the plaintiff's argument that the ZBA's decision was erroneous because the ZBA "did not seriously consider the unnecessary hardship prong" and "made no findings with respect to unnecessary hardship." The court ruled that "the ZBA is not obligated to make specific findings of fact where, as here, none have been requested" and that "the ZBA considered the hardship issue." The court further ruled that, "[i]n the absence of an express finding of hardship when an application is granted, [the trial court's] obligation on appeal is to examine the record and, employing [a] deferential standard . . . determine whether the evidence supports the decision." Thus, the court concluded that the ZBA's failure to make specific findings of fact on hardship was not erroneous.

The court then determined that the ZBA could have reasonably concluded that, "because the lot is irregularly and uniquely shaped, and contains wetlands and challenging topographical features, the lot essentially requires the type of development" that the Toys proposed. The court further ruled that "the ZBA could have reasonably determined that because the new zoning ordinance removes manufactured housing parks from the inventory of permitted uses city-wide, the proximity to existing manufactured home parks is a special condition that renders this property unique in Rochester for purposes of a variance." This appeal followed.

On appeal, the plaintiff argues that the trial court erred because it: (1) assumed the ZBA made a hardship determination and then deferred to that assumed determination; (2) failed to accept additional evidence or remand the ZBA's decision for clarification; (3) substituted its own judgment for the ZBA's; (4) failed to address the plaintiff's argument that the ZBA impermissibly considered the wisdom of the 2014 ordinance in granting the variance; and (5) could not have affirmed the ZBA because the ZBA was unable to find hardship based on the evidence before it. The plaintiff additionally argues that the court

4

unsustainably exercised its discretion in denying the plaintiff's motions to expand the record. We address each argument in turn.

"We will uphold the superior court's decision on appeal unless it is unsupported by the evidence or legally erroneous." Lone Pine Hunters' Club v. Town of Hollis, 149 N.H. 668, 669 (2003). "For its part, the trial court, in reviewing the decision of a zoning board of adjustment, is limited to a determination of whether, on the balance of the probabilities, the decision was unlawful or unreasonable." Id. at 669-70 (quotation omitted). "To the extent the ZBA made findings upon questions of fact properly before the court, those findings are deemed prima facie lawful and reasonable." Id. at 670; see RSA 677:6 (2016). "The review by the superior court is not to determine whether it agrees with the zoning board of adjustment's findings, but to determine whether there is evidence upon which they could have been reasonably based." Lone Pine Hunters' Club, 149 N.H. at 670. The trial court does not sit "as a 'super zoning board.'" See Cook v. Town of Sanbornton, 118 N.H. 668, 671 (1978).

The plaintiff first argues that the trial court "recognized that the ZBA had not made a [hardship] determination," but then "went a step too far in stating that it "must assume that the ZBA made that determination." The plaintiff argues that the court further erred by applying a deferential standard of review to this assumed determination of hardship. We are not persuaded.

The trial court correctly recognized that the ZBA's grant of a variance carries with it an implicit finding of hardship. See Thomas v. Town of Hooksett, 153 N.H. 717, 724 (2006); cf. Smith v. Lillian V. Donahue Trust, 157 N.H. 502, 508 (2008) (noting that we assume that the trial court made all subsidiary findings necessary to support its decision). Here, although the ZBA did not explicitly address unnecessary hardship in its written decision, the record shows that the Toys addressed unnecessary hardship in their variance application, and that the ZBA discussed whether the Toys had demonstrated unnecessary hardship. The ZBA's failure to explicitly make a finding regarding unnecessary hardship was not an error: "[a]lthough disclosure of specific findings of fact by a board of adjustment may often facilitate judicial review, the absence of findings, at least where there is no request therefor, is not in and of itself error." Kalil v. Town of Dummer Zoning Bd. of Adjustment, 155 N.H. 307, 310 (2007). Here, the plaintiff did not request specific findings of fact from the ZBA. Accordingly, the court did not err when it assumed that the ZBA made a finding of unnecessary hardship, which was necessary to support the ZBA's decision to grant the Toys a variance.

The trial court correctly ruled that, in reviewing this implied finding of unnecessary hardship, the court's role was to determine whether there was evidence upon which it could have been reasonably based. See Lone Pine

5

Hunters' Club, 149 N.H. at 670. Consistent with this standard of review, the court looked to the record to determine whether there was sufficient evidence to support the ZBA's finding of hardship. Accordingly, we conclude that the trial court did not err.

The plaintiff next argues that because the ZBA did not explicitly make a finding in regard to unnecessary hardship, the trial court should have accepted additional evidence or remanded the case to the ZBA for clarification. We disagree. In Kalil, we stated that the superior court, when reviewing a ZBA decision that the court found unclear and that lacked findings, had several options. See Kalil, 155 N.H. at 310. Consistent with its statutory authority, the court could conduct its review based upon the decision and record before it, take additional evidence, or remand the case to the ZBA for clarification. Id. at 310, 312. Thus, although the trial court here could have taken additional evidence or remanded to the ZBA for clarification if it found the decision to be unclear, on the record before us we conclude that the trial court did not unsustainably exercise its discretion by choosing to conduct its review based upon the decision and record before it.

The plaintiff next argues that the trial court erred by substituting its own judgment for the ZBA's. The plaintiff asserts that the ZBA "decided that [it] did not need to find hardship to issue a variance" and "specifically made no determination" that the Toys had proven unnecessary hardship. Thus, the plaintiff contends that the court impermissibly substituted its own judgment for that of the ZBA when it determined that the ZBA had found unnecessary hardship.

In support of its contention that the ZBA decided that it did not need to find hardship to issue a variance, the plaintiff relies upon the following discussion between the ZBA members:

[ZBA Member]: The [plaintiff's] attorney did bring up something.

THE CHAIRMAN: What's that?

[ZBA Member]: That there is not hardship. There isn't.

THE CHAIRMAN: Well, when you look at that case, there has never been. Of the 17, 18 years I've been here, there's no hardship to any case if you want to look at it that way. If a guy wants to put a storage shed five feet from the line, there's no hardship there.

[ZBA Member]: And we've cancelled cases because of hardship before, so.

THE CHAIRMAN: Well, anyway, enough talk.

[ZBA Member]: It is what it is.

6

We disagree with the plaintiff's characterization of this discussion as the ZBA deciding that it did not need to find unnecessary hardship to grant a variance. First, we cannot tell from the record what the chairman meant by "when you look at that case" because there is no preceding reference to any case; the conversation lacks context. Second, the chairman's statement that "there's no hardship to any case if you want to look at it that way," implies that he does not look at a variance request "that way" and thus does not believe that there is never any hardship. (Emphasis added.) As discussed above, the court did not err when it assumed that the ZBA made a finding of unnecessary hardship, which was necessary to support the ZBA's decision to grant the Toys a variance. See Thomas, 153 N.H. at 724. Nor did the ZBA err by not making specific factual findings where neither party requested such findings. See Kalil, 155 N.H. at 310.[3]

The plaintiff next contends that the trial court failed to address the plaintiff's argument that the ZBA "impermissibly granted the variance because the ZBA disagreed with the Zoning Ordinance concerning manufactured home parks." Contrary to the plaintiff's assertion, the trial court addressed this argument in denying the plaintiff's motions to expand the record. The court noted that, although almost all of the plaintiff's evidence supporting its argument on this point predated the September 2016 ZBA hearing, the plaintiff did not raise this argument during either the hearing or in the plaintiff's motion for rehearing. Accordingly, the court declined to address this argument for the first time on appeal.

"Unless the superior court finds 'good cause,' it may not consider any ground for appeal that was not first presented to the ZBA in a motion for rehearing." McDonald v. Town of Effingham Zoning Bd. of Adjustment, 152 N.H. 171, 174 (2005). Based upon our review of the record, we agree with the trial court that the plaintiff did not raise this issue before the ZBA during the September 2016 ZBA hearing. The plaintiff did allude to the issue in its motion for rehearing, but the reference was unaccompanied by any supporting evidence, even though, as the trial court observed, such evidence was readily available.[4] Therefore, we conclude that the court did not err in declining to address the issue for the first time on appeal.

---

[3] For the same reasons, we find unpersuasive the plaintiff's argument that, "[w]hen faced with the [plaintiff's] objection, the ZBA remained silent on the hardship element, [which was] an admission that the Toys had not met their burden of proof on that required prong."

[4] The plaintiff cited the fact that the Toys expressed their "disagreement with the changes to the Rochester Zoning Ordinance" at the ZBA hearing. However, the fact that the Toys disagreed with the new ordinance is immaterial to whether the ZBA granted a variance for a non-statutory reason. The plaintiff also cited the fact that the ZBA chairman stated at the hearing that "[the ZBA] can bring up how [the ordinance] was rewritten in the first place." But the chairman then stated: "but we're not going to get into that." Thus, none of this evidence supported the plaintiff's contention that the ZBA impermissibly considered the wisdom of the ordinance in deciding whether to grant the Toys a variance.

7

The plaintiff next argues that there was insufficient evidence of hardship for the ZBA to approve the Toys' application. RSA 674:33, I(b)(5)(A) defines unnecessary hardship:

(A) For purposes of this subparagraph, "unnecessary hardship" means that, owing to special conditions of the property that distinguish it from other properties in the area:

(i) No fair and substantial relationship exists between the general public purposes of the ordinance provision and the specific application of that provision to the property; and

(ii) The proposed use is a reasonable one.

The trial court determined that the ZBA could reasonably have found that Lot 54-1 has several special conditions that distinguish it from other properties in the area. The court noted that Lot 54-1 is "irregularly and uniquely shaped, and contains wetlands and challenging topographical features." The court further noted "the location and configuration of the lot itself, positioned as it is near other manufactured home parks," and the fact that these other manufactured housing parks are not permitted under the new zoning ordinance, which rendered Lot 54-1 "unique in comparison to other properties in the area."

Owing to these special conditions, the court ruled that the ZBA could have reasonably concluded that Lot 54-1 "essentially requires the type of development proposed by the Toys in the central to southern portions of the lot," and that the use was a reasonable one. The court further ruled that the ZBA could have reasonably concluded that "there exists no fair and substantial relationship between the purpose of the new zoning ordinance . . . and its application to this specific property." We agree that the ZBA could have reasonably concluded that the Toys presented sufficient evidence of unnecessary hardship to satisfy RSA 674:33, I(b)(5).

Finally, the plaintiff argues that the trial court unsustainably exercised its discretion in denying the plaintiff's motions to expand the record. The plaintiff argues that the evidence it sought to introduce supported its argument that the chairman disapproved of the 2014 changes to the zoning ordinance, and that he granted the variance "because he was upset . . . with how the Zoning Ordinance had changed."

"In an appeal to the court, the burden of proof shall be upon the party seeking to set aside any order or decision of the zoning board of adjustment or any decision of the local legislative body to show that the order or decision is unlawful or unreasonable." RSA 677:6. "The trial court makes its

determination based upon the record before the zoning board and such other evidence as may have been received by the court." Peter Christian's v. Town of Hanover, 132 N.H. 677, 683 (1990). "Evidence beyond the certified record may be introduced in superior court and may be taken into consideration even though it was not before the board." Id. "Such additional evidence is intended to assist the court in evaluating the action of the board where the record is incomplete." Id. "It is within the discretion of the trial court to determine whether additional evidence will be taken." Id. "Because the trial judge is in the best position to determine the sufficiency of the record, we will not reverse his ruling on the admissibility of additional evidence, absent an [unsustainable exercise of discretion]." Id. at 683-84.

The trial court ruled that "the evidence of [the chairman]'s potential conflict of interest, bias or improper conduct does not go to the issues that were before the ZBA." The court determined that the plaintiff was "attempting to introduce into the record an entirely new issue — one that was at no time raised in the proceedings below." The court reasoned that "bias issues must be raised at the earliest possible time in order to allow the local board to address them."

Here, except for the chairman's comments on February 21, 2017, all of the evidence the plaintiff sought to introduce was known to the plaintiff at the time it filed its motion for rehearing. Further, the plaintiff's counsel attended the ZBA hearing on September 14, 2016, and had the opportunity to raise the issue of the chairman's potential ulterior motives before the ZBA. Yet the plaintiff did not argue that the chairman was potentially biased either during the September ZBA hearing or in the plaintiff's motion for rehearing. We agree with the trial court that the plaintiff did not raise this argument — that the chairman was potentially biased because he did not support the zoning ordinance at issue in the Toys' variance application — at the earliest possible time. See Fox v. Town of Greenland, 151 N.H. 600, 604 (2004) (requiring disqualification issues in administrative appeals to be "raised at the earliest possible time"); see also Taylor v. Town of Wakefield, 158 N.H. 35, 38 (2008) (appellants raised disqualification issue at the earliest possible time when they raised it in a motion for rehearing, and they first learned of reason for disqualification after the ZBA had voted); Bayson Properties v. City of Lebanon, 150 N.H. 167, 172 (2003) ("Waiting until after eleven hours of hearings held over three months to raise a concern about alleged bias of board members does not fulfill the plaintiffs' obligation to raise the issue at the earliest possible time.").

To the extent the plaintiff asserts that it was not making a bias argument, and that the trial court erred in so construing the motion to expand the record, the plaintiff was obligated to inform the trial court of its misapprehension of the plaintiff's position in a motion for reconsideration. See

<u>New Hampshire Department of Corrections v. Butland</u>, 147 N.H. 676, 679 (2002). It did not do so. For these reasons, we conclude that the trial court did not unsustainably exercise its discretion in denying the plaintiff's motions to expand the record.

<u>Affirmed</u>.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.